IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DONNA PENADO,[1]

    Plaintiff,

vs.                                      CASE NO. 5:06CV137-RS/AK

MICHAEL J. ASTRUE,[2]
**Commissioner of Social Security**

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) under Title II of the Act and supplemental security income benefits (SSI) filed under Title XVI of the Act.

---

[1] Plaintiff's name on the complaint is spelled "Penado." Although it Is spelled differently on subsequent papers and in the transcript as "Penedo," the pleadings have not been changed, so for court purposes her name will be spelled as it is on the complaint.

[2] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

### A.  PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on February 20, 2004, alleging a disability onset date of August 19, 2001, because of degenerative disc disease of the cervical and lumbar spine.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on October 21, 2005, and entered an unfavorable decision on January 4, 2006.  The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

### B.  FINDINGS OF THE ALJ

The ALJ found that Plaintiff had degenerative disc disease of the cervical and lumbar spine, which are severe impairments, but she does not meet the requirements of Listing 1.04 because there is no evidence of the compromise of a nerve root, nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in the inability to ambulate effectively despite her use of a cane.  (R. 15).  The ALJ did not find that Plaintiff's depression was severe because she has never had counseling or mental health treatment and there is no evidence that the condition imposes any significant limitations on her ability to do work related activities.

Thus, the ALJ found Plaintiff capable of performing light work with a sit/stand option, no climbing of ladders, ropes, and scaffolds, with only occasional climbing of

**No. 5:06CV137-RS/AK**

ramps and stairs, occasional balancing, stooping, kneeling, crouching and crawling, and no concentrated exposure to temperature extremes, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards.

Based on the non-exertional limitations of Plaintiff's RFC, the ALJ found her unable to perform her past relevant work as a waitress, but that based upon vocational expert testimony Plaintiff could perform a number of other jobs in the national economy such as gate guard, office helper, and ticket seller.

**C.     ISSUES PRESENTED**

Plaintiff argues that the ALJ erred in not properly articulating his reasons for rejecting the opinions of Plaintiff's treating physicians, Drs. Manale, Watermeier, and Elzawahry; that the ALJ erred in applying the pain standard adopted by the Eleventh Circuit; that the ALJ erred in posing a defective hypothetical to the vocational expert; and the ALJ erred in failing to consider the limitations posed by Plaintiff's osteoarthritis and depression.

The government responds that the ALJ properly considered the opinions of Plaintiff's treating sources, none of whom found her to be totally or permanently disabled.  The ALJ's hypothetical to the vocational expert was properly based on the record as a whole and on the light work restrictions noted by Plaintiff's own physician. The ALJ articulated his reasons for not accepting Plaintiff's allegations about pain and depression because of lack of or conservative treatment of these conditions.  Plaintiff sought only pain medication for her back and had not sought any mental health

**No. 5:06CV137-RS/AK**

treatment for her depression, despite being on anti-depressant medication for several years.

In reply, Plaintiff argues that the MRI showing a disc herniation at C5-6 supports the findings of Dr. Elzawahry, Plaintiff's treating physician, who found her not capable of light work activity and the ALJ must give this opinion controlling weight. Plaintiff argues that the ALJ misrepresented in his opinion that he had adopted the limitations set forth by this doctor, when in fact he did not adopt the restrictions. Plaintiff also argues that the ALJ failed to distinguish Dr. Manale's opinion that Plaintiff was unsuitable for work, yet adopted Dr. Watermeier's finding that she could perform light work.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

D.  **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It

is more than a scintilla, but less than a preponderance.  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  <u>See</u> <u>Bridges v. Bowen</u>, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  <u>Barron v. Sullivan</u>, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid.  <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  <u>Id.</u> (citations omitted).

    A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education,

and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final

**No. 5:06CV137-RS/AK**

decision with or without remand. 42 U.S.C. § 405(g); <u>Myers v. Sullivan</u>, 916 F.2d 659, 676 (11th Cir. 1990).

E.     **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff has been treated by Dr. Manale since January 2, 2001, when she presented to him with a "long history of low back pain" beginning nearly 20 years previous when she picked up her child. (R. 184). She had no surgery and had been treated by Dr. Levy, but was unable to receive medication from him any more so she came to Dr. Manale. (R. 184). She claimed to have had epidurals and physical therapy with no success. (R. 184). X-ray confirmed marked degenerative changes most notable at L2-3 and L3-4 with diminution of the disc space and significant anterior osteophytes. She was given pain medication and set for physical therapy. She was restricted to light duty through March 22, 2001. (R. 183). On April 4, 2001, she continued to complain of back pain and was found upon examination to have 50% of lumbar spine motion, but released to regular duty. (R. 183). On June 18, 2001, she was having continued pain, but no new injury, and Dr. Manale restricted her to light duty. (R. 182).

Plaintiff was injured at work when she fell and went to the hospital the next day for evaluation on August 19, 2001. (R. 122-129). X-rays revealed no fracture. (R. 128). She smelled of alcohol although she denied drinking. (R. 127). She was prescribed Lortab and Xanax and told to follow up with Dr. Manale. (R. 129).

**No. 5:06CV137-RS/AK**

On August 25, 2001, she again presented to the emergency room for neck and back pain resulting from the fall the week before and was given a pain injection and a prescription for Vicodin and a muscle relaxer. (R. 142). She was told to follow up with Dr. Manale. (R. 142).

She sought treatment from Dr. Manale on October 3, 2001, and new x-rays revealed no new injury, but "osteophytes noted at L2-3 and l3-4 in keeping with the previous history of lumbar spondylosis." (R. 130-132). He gave her prescriptions for Lortab and Soma, was sending her to physical therapy, and told her to return In 4 weeks, while "[i]n the meantime, she is unsuitable for work." (R. 132, 182).

On December 3, 2001, there was nothing new, but she was treated again with an injection and given "Total Temporary" disability status. (R. 181).

On January 3, 2002, her disability status was continued and she was given pain medication and told to return in 4 weeks. (R. 179). On February 4, 2002, her disability status was again continued. She was given injections and told to come back in 7 to 8 weeks. (R. 176). On February 25, 2002, she presented to the emergency room with flank pain and told to follow up with Dr. Manale as soon as possible. (R. 133-136).

She came in to the office on March 25, 2002, having visited the emergency room for intense low back pain. (R. 175). On June 10, 2002, she presented to the emergency room with lower back pain requesting pain medication. (R. 139). She was referred to her regular physician for pain management. (R. 140).

**No. 5:06CV137-RS/AK**

She saw Dr. Manale on June 26, 2002, complaining of progressive pain in her back and neck and a repeat MRI and EMG nerve study were ordered. (R. 174). Her anti-depressant was changed because of increased depressive symptoms. (R. 174). Following the objective tests which indicated some decrease in range of motion In the neck (50%) and lower back (75 to 80% of normal) with mild tenderness noted, it was decided to continue with pain medication and trigger point injections with no surgery. (R. 173).

She broke her ankle and was treated on October 4, 2002, without surgery, and told to rest and wear a walking boot cast. (R. 170-172). On December 14, 2002, Dr. Manale informed her that he was retiring, but she could continue treatment for her resolving ankle fracture and lower back problems with Dr. Watermeier and Dr. Adatto. (R. 169). Dr. Watermeier examined her on January 21, 2003, and determined that no surgery would be recommended and continued treatment would consist of medication and trigger point injections. (R. 168). On April 22, 2003, Dr. Watermeier performed a full orthopedic examination and although he found her prognosis poor for full recovery, he released her to light work with no change in her treatment. (R. 163).

On May 14, 2003, she presented to the emergency room having reinjured her right ankle, which was x-rayed and determined to be sprained. (R. 137-142). She was given pain medication, a "walker boot," and told to follow up with her regular physician. (R. 138).

**No. 5:06CV137-RS/AK**

Dr. Watermeier examined her on July 7, 2003, and found her to be essentially the same, except she twisted her ankle re-injuring it and was walking with a cane. (R. 161). Her elbow was also bothering her, but her lower back appeared to be the same. Again, he did not recommend surgery but reiterated her disability status as light work and recommended that she return to see him on an as needed basis only. (R. 161-162).

Plaintiff was admitted to the hospital on September 8, 2003, complaining of pain in her *left* foot this time, but nothing was noted on x-ray and she was given an "ortho boot" and unspecified medications. (R. 146-152). She returned on September 23, 2003, complaining of swelling and pain. (R. 143-145).

Dr. Watermeier saw her on October 6, 2003, and her condition was deemed stable and her prognosis fair. Injections were given and she was continued on light work status. (R. 159-160).

On January 14, 2004, there was no change in her symptomology, pain medications were refilled and she was maintained on light work status. (R. 156-157). On April 12, 2004, Dr. Watermeier did a functional assessment and found that she should avoid repetitive stooping or bending and repetitive lifting of objects over 10-20 pounds as well as prolonged sitting or standing in the same position for 45 minutes without being able to move around or change position. (R. 153). She should also avoid repetitive bending, squatting and walking on uneven surfaces. (R. 153). He listed her work status as light based on the DOT. (R. 153).

**No. 5:06CV137-RS/AK**

On May 17, 2004, she was evaluated by psychologist David Ghostley, who found her concentration and memory unimpaired, major depressive disorder, single episode, severe without psychotic features, and suggested that she seek consultation with a psychiatrist to reassess her present regimen of anti-depressant medication.  (R. 185-186).

Treatment notes from the Washington County Health Department cover a two month period (June 2004 to August 2004) where Plaintiff requested narcotic pain medication and was suspected of drug seeking behavior.  (R. 201-204).

Treatment notes from Dr. Elzawahry cover a period from January 2005 to August 2005.  (R. 235-247).  Results of an EMG showed "denervation potentials in the upper and lower extremities suggestive of C6-7 and L5-S1 radiculopathy."  (R. 245).  A cervical MRI confirmed "Central slightly right paracentral disk herniation at the C5-6 level and a left paracentral disk herniation at the C6-7 level.  (R. 243-244).  Dr. Elzawahry prescribed a limited number of Lortab and suggested conservative treatment measures with activities as tolerated and epidural injection in March 2005.  (R. 237). He saw her again in April 2005, and suggested she follow up with her family physician.  (R. 236).  In August 2005, he recommended that she continue with pain medication and heat, but declined to give her more injections at the time.  (R. 259-260).  Treatment notes from December 2005 show that her condition was unchanged from the previous

**No. 5:06CV137-RS/AK**

examination, injections were administered and pain medications refilled.  (R.277-278). Additional injections were given in January 2006.  (R. 279-280).

Dr. Elzawahry completed a Clinical Assessment of Pain for Plaintiff on November 15, 2005, where he stated that "Pain is present but does not prevent functioning every day activities or work."  (R. 262).  He suggested that she lift only 10 to 5 pounds, sit, stand and walk only 2 hours, and that she might miss one day a month from work because of her condition.  (R. 263).

A Psychiatric Review form was completed by a psychiatrist on June 18, 2004, who found her to have only mild to no limitations resulting from her depression and noted that she had sought no mental health treatment and was receiving her anti-depressant medication from a non-psychiatrist.  (R. 187-200).  Another Psychiatric Form completed on September 1, 2004, also found her limitations to be mild and her condition not severe, noting that she had sought no mental health treatment and seemed to have let her Prozac prescription lapse.  (R. 213-225).

A Physical RFC dated September 3, 2004, assessed her as capable of lifting 50 pounds occasionally and 25 pounds frequently, standing, walking and sitting up to 6 hours a day limited only by occasional kneeling, crouching and crawling and environmental concentrated exposures.   (R. 227-235)

Her self-described daily activities are extremely limited, no personal care, simple meal preparation, no shopping, no household chores, no driving, no visiting, no hobbies, "no life," in her words, because of her back and neck pain.  (R. 68-78, 93-103).

**No. 5:06CV137-RS/AK**

## F.     SUMMARY OF THE ADMINISTRATIVE HEARING

Plaintiff appeared at the hearing with counsel limping and using a cane. (R. 287-288). She stated that she was prescribed the cane by a doctor in Louisiana and had been using it for 2 years. (R. 288). She got a $5,000.00 settlement with workers compensation for the injury in 2001. (R. 290). She was 49 years old at the time of the hearing, had an 11th grade education, and had past relevant work as a waitress. (R. 291). Plaintiff testified that she cannot care for her personal needs and her daughter helps her. (R. 293). She cannot walk or sit for long periods of time, does not drive, cannot lift, and basically spends her day walking around doing small chores as she can. (R. 294). Her pain is mostly in her neck, but it radiates into her arms causing numbness and tingling which interferes with her sleep and is exacerbated by any activity. (R. 295). According to Plaintiff she cannot walk but about 10 to 15 minutes, sitting is painful, and she can lift only 3 to 5 pounds. (R. 296). The pain medication she is on takes the edge off and she is still depressed despite being on Prozac. (R. 297). She estimates her pain at a level 7 or 8. (R. 297-298). Likewise, the shots just take the edge off the pain. (R. 299). She said she had physical therapy, the tens unit, back stretching, but none of it helped. (R. 299).

The vocational expert testified that her past relevant work was between light and medium levels of exertion. (R. 301-302). The hypothetical presented was an individual

**No. 5:06CV137-RS/AK**

not yet 50, with limited education and prior work experience as a waitress, with all the symptoms Plaintiff described at the hearing, and the expert testified that there would be no jobs she could do with the level of pain she described. (R. 302-303). Another hypothetical was presented using the functional assessment of Plaintiff's treating physician, Dr. Watermeier as set forth in the report of April 12, 2004, (R. 153), and the expert stated that there were a number of jobs she could perform such as gate guard, office helper, and ticket seller. (R. 303).

## G. DISCUSSION

### a) Treating physicians' opinions

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Nevertheless, the ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis v. Callahan, 125 F.3d 1436, 1440

**No. 5:06CV137-RS/AK**

(11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). If an ALJ rejects a treating physician's opinion, he must give explicit, adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted as true as a matter of law. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).

Contrary to Plaintiff's assertion, the ALJ in this case did not reject in toto any of the opinions of Drs. Manale, Watermeier or Elzawahry. As the undersigned reads the medical evidence at issue and the decision of the ALJ, Dr. Manale never stated that Plaintiff was permanently precluded from all work activity, he made it clear that the work status was temporary and when Dr. Watermeier took over her treatment, he was even clearer that he considered her to be on "light duty" and even referred to the DOT in making this assessment. (R. 153). The functional assessments of Dr. Elzawahry in response to a form sent to him were inconsistent, but mostly supported the ALJ's decision in that the doctor stated that Plaintiff's pain would not prevent her from work activity nor interfere with a job more than once a month. (R. 262). Dr. Elzawahry's opinion that she could lift only 5 to 10 pounds, sit, stand and walk only 2 hours out of an 8 hour day is inconsistent with his other opinion that she could work in spite of her pain and his decision to treat her conservatively. His opinion is also inconsistent with her other treating sources that opined she could perform light work activity, as well as state agency doctors, one of whom assessed her to be capable of some medium exertion.

**No. 5:06CV137-RS/AK**

As the commissioner contends, none of Plaintiff's treating physicians expressed an opinion that she should refrain from all work permanently and none of them elected to treat her in a more aggressive manner, which would indicate their assessment of her condition as more severe and debilitating.

Thus, there is no merit to Plaintiff's contention that adoption of the treating physician's opinion warrants reversal.

b)   Pain standard

Pain and other subjective symptoms are treated by the regulations as symptoms of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, "unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  Accord 20 C.F.R. § 416.929.  In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test.  Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991).

**No. 5:06CV137-RS/AK**

"While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1216.  The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence."  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).  Standing alone, however, a claimant's testimony of pain is not conclusive evidence of disability.  Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987).  If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit and adequate reasons, and these reasons must be based on substantial evidence.  Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  The failure to articulate adequate reasons for discrediting pain testimony mandates that the testimony be accepted as true as a matter of law.  Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff takes issue with the ALJ's statement that he rejected the level of severity she claimed because she did not seek out more "significant treatment other than pain medications." (R. 16).  Indeed, the records show that Plaintiff has been examined by a number of physicians over time and endured injections in addition to her pain medication as treatment for her back and neck pain.  However, it is significant to note that although she claims to have tried everything, i.e. physical therapy, exercise and a tens unit, there are no records to support these attempts despite several entries by her treating physicians that physical therapy was in order.  Given that Plaintiff herself

**No. 5:06CV137-RS/AK**

concedes that the pain medication and the injections do nothing more than take the edge off the pain and she has no life whatsoever with her current pain levels, the ALJ correctly noted that more significant treatment would seem in order if indeed Plaintiff suffered as she describes.  Plaintiff also said she was uncertain if the anti-depressant worked since she remained depressed, but there is no effort to seek help from a mental health specialist which would seem appropriate if Plaintiff is indeed debilitated from depression.  Regardless, the ALJ gave his reasons for rejecting her subjective testimony and the record supports his reasons and upon review, the Court is bound by such findings.

      c)     Defective hypothetical to the vocational expert

At the fifth step of the evaluation process, the ALJ must determine whether a Claimant, based on his residual functional capacity, age, education and work experience, can adjust to other work in the national economy.  20 C.F.R. § 404.1520(a)(4).  The ALJ may make this determination by reliance upon the Medical Vocational Guidelines or by utilizing the services of a vocational expert.  Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004).  The Eleventh Circuit has "recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level."  Wolfe v. Chater, 86 F.3d at 1078, quoting Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992).  See also Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995).  "It is only when the claimant can clearly do

**No. 5:06CV137-RS/AK**

unlimited types of work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted).  Exclusive reliance upon the grids is not appropriate when claimant has a nonexertional impairment that significantly limits his basic work activities.  Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990).

When the ALJ uses a vocational expert, he elicits responses from the expert by posing hypothetical questions to him or her.  Phillips, 357 F.3d at 1240.  In order for the expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical which includes all of Claimant's impairments.  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).  The ALJ is only required to pose those limitations he finds severe in the hypothetical to the expert. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).  The ALJ is not required to include in his hypothetical any medical conditions which are controlled by medication. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987).

The ALJ posed a hypothetical using a light work exertional level which is supported by the record, including the opinion of Dr. Watermeier and several state agency physicians.  He did not include severe pain and depression in the hypothetical because he specifically found these conditions to be not severe.  Thus, there is no error with regard to the hypothetical used by the ALJ and no merit to this ground for relief.

**No. 5:06CV137-RS/AK**

    d)    <u>Plaintiff's osteoarthritis and depression</u>.

As stated *supra*, the ALJ supported his opinion on Plaintiff's level of pain and mental health status with sufficient references to the record, which is all he is required to do.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this  **25th**  day of June, 2007.

        *s/ A. KORNBLUM*
        **ALLAN KORNBLUM**
        **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 5:06CV137-RS/AK**